**Slip Op. 02-128**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                            :
G&R PRODUCE COMPANY, et al.,                 :
                                            :
          Plaintiffs,                        :
                                            :          Before:  WALLACH, Judge
          v.                                 :          Consol. Court No.: 96-11-02569
                                            :
UNITED STATES OF AMERICA,                    :
                                            :
          Defendant.                         :
_____   :

[Plaintiffs' Motion to Enter Judgment Pursuant to Test Case Findings is DENIED.]

                                          Decided:  October 24, 2002

Givens and Associates, PLLC (Robert T. Givens, Scott L. Johnston), for Plaintiffs.

David W. Ogden, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, Department of Justice, Amy M. Rubin, Trial Attorney; Beth C. Brotman, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, for Defendant.

**OPINION**

**WALLACH, Judge.**

**I**

**PRELIMINARY STATEMENT**

This consolidated group of cases comes before the court following the refusal by the

United States Customs Service ("Customs" or the "Government") to stipulate judgment in each

individual matter, pursuant to the court's holding in Black & White Vegetable Co. v. United

1

<u>States</u>, 125 F. Supp. 2d 531 (CIT 2000). Familiarity with the court's decision in <u>Black & White</u> is presumed.[1]

As the current consolidated cases were originally suspended under <u>Black & White</u>, a brief summary of that case adequately describes their posture. In <u>Black & White</u>, plaintiff challenged Customs' refusal to reliquidate certain imported shipments of "Persian limes." The limes were erroneously entered by the plaintiff's importer, under 0805.30.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which referred to "[L]imes (Citrus Aurantifolia)," *eo nomine,* at a duty rate of 2.2 cents per kilogram during 1993 and 1.9 cents per kilogram during 1994.[2] Customs subsequently classified and liquidated the limes under this subheading and imposed duties accordingly. However, limes of the *citrus latifolia* variety, should have been entered under the subheading 0805.90.00, HTSUS, at a duty rate of .9 percent *ad valorem* in 1993 and duty free in 1994.[3]

---

[1] The current cases were formerly suspended under <u>Black & White Vegetable Co. v. United States</u>, 125 F. Supp. 2d 531 (CIT 2000), pursuant to USCIT R. 84, and would have been disposed of accordingly, had Customs not refused to reliquidate Plaintiffs' entries in accordance with <u>Black & White</u>, and subsequently denied Plaintiffs' protest. Customs asserts that due to unique factual circumstances of each case, these cases cannot properly be disposed of under <u>Black & White</u>. In response, Plaintiffs, G & R Produce Company, I. Kunik Company, Rio Produce Co., McAllen Fruit & Vegetable, Inc., Robert Ruiz, Inc., London Fruit, Inc., G-M Sales Co., Inc., Val-Verde Vegetable Co., Inc, Frontera Produce, Inc., Trevino International, Inc., and Limeco, Inc. have filed eleven separate but virtually identical Motions to Enter Judgment Pursuant to the Test Case Findings. Plaintiffs ask the court to dispose of the current cases under <u>Black & White</u>. <u>See</u> Plaintiffs' Motion to Enter Judgment Pursuant to Test Case Findings ("Plaintiffs' Motion"). The cases were consolidated for judicial economy and these motions will be treated as a single motion for summary judgment to reflect the consolidation.

[2] Subheading, 0805, HTSUS, provided for:
      0805............Citrus fruit, fresh or dried:
      0805.30.......Lemons (<u>Citrus</u> <u>limon</u>, <u>Citrus</u> <u>limonum</u>) and limes (<u>Citrus</u>       <u>aurantifolia</u>):
      0805.30.40...Limes

[3] Subheading 0805.90.00, HTSUS, provided for
      0805...............Citrus fruit, fresh or dried:
      0805.90.00.....Other, including kumquats, citrons and bergamots

Following Customs' denial of the plaintiff's earlier filed protest, the plaintiff moved for summary judgment, claiming that reliquidation was required under 19 U.S.C. § 1520(c) (1988) due to the mistaken classification of the limes by its import broker and Customs.[4] Plaintiff claimed that Customs and its import broker were mistaken regarding the proper botanical designation for the limes and that mistake resulted in the misclassification. Customs admitted that its import specialists were also mistaken about the botanical name of the limes, but contended that the mistake was one of law, barring reliquidation under 19 U.S.C. § 1520(c). Black & White, 125 F. Supp. 2d at 534.

Plaintiff was granted summary judgment because the proper taxonomical classification of an imported botanical item is a question of fact and not part of the legal analysis for classification purposes. Although a mistake of fact had been committed with regard to the proper botanical classification by both the importer and Customs, the source of the mistake was irrelevant, provided that such mistake resulted in the erroneous classification. Id.

In this case, under this motion, Customs has provided depositions, documentation, and statements to support its argument that the court's findings in Black & White are not necessarily here applicable. That evidence suggests Customs import specialists may have misclassified the subject limes due to a misapprehension of the applicable tariff provision and not a misunderstanding of the correct botanical classification. Section 1520(c) requires only that a mistake of fact by either party result in the erroneous classification of the subject goods; Customs' submitted evidence precludes the court from granting summary judgment in favor of

---

[4] All citations to 19 U.S.C. § 1520 in this opinion are to the 1988 version of the United States Code, which was in effect during the period of time relevant to this case. The statutory language of 19 U.S.C. § 1520 has since changed.

the Plaintiffs or the Defendant.[5] As it will be discussed at length below, there remains a genuine issue of material fact as to whether the Customs import specialists' mistake was factual or legal in nature. Accordingly, the case cannot be properly resolved by summary judgment based upon the evidence presented.

## II

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c). "This may be done by producing evidence showing the lack of any genuine issue of material fact or, where the non-moving party bears the burden of proof at trial, by demonstrating that the nonmovant has failed to make a sufficient showing to establish the existence of an element essential to its case." Black & White, 125 F. Supp 2d at 536 (citing Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988); Celotex Corp. v. Catrett, 477 U.S. 317, 324-325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

In determining if a party has met its burden the court does not "weigh the evidence and determine the truth of the matter," but rather the court determines "whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The court views all evidence in the light most favorable to the non-moving party,

---

[5] Although the Defendant did not file a cross-motion for summary judgment, Defendant notes that the court may sua sponte grant judgment in favor of the non-moving party. Defendant's Supplemental Opposition to Plaintiff's Summary Judgment Motion at 3 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Peg Bandage, Inc. v. United States, 17 CIT 1337 (1993); Nat'l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1188 (Fed. Cir. 1996)).

drawing inferences in the nonmovant's favor. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

**III**

**ARGUMENTS**

### A. Plaintiffs Argue that Customs is Required to Stipulate Judgment According to the Holding in <u>Black & White</u>

Plaintiffs assert that a remedial mistake of fact has been committed, that it is irrelevant to the court's analysis who committed the mistake, and that this case is properly disposed of by the holding in <u>Black & White</u>. In its Motion for Summary Judgment (the same language is employed in each of the original eleven motions), Plaintiffs assert that, "[t]he Court's finding of mistake of fact on Customs part in this regard extends to the instant case by reason of the identical circumstances . . . which it shares with <u>Black & White</u>." Plaintiffs' Motion to Enter Judgment Pursuant to Test Case Findings ("Plaintiffs' Motion") at 2.

Plaintiffs also maintain that Customs must stipulate judgment on the consolidated cases due to the doctrine of collateral estoppel. Plaintiffs claim that the current issues were litigated fully in <u>Black & White</u> and that Customs had a full and fair chance to defend its position in that case.

### B. Defendant Argues that Customs is Permitted to Differentiate the Consolidated Cases from <u>Black & White</u>

Following the entry of judgment in <u>Black & White</u>, the government claims that it

reviewed each of the eleven cases suspended under Black & White in order to determine whether there was any reason not to stipulate judgment. The Government says that:

> In reviewing the entry papers in those cases, it became apparent that the facts underlying these other cases were not the same as those found by the Court in Black & White. Specifically, while the correct botanical name for the limes in issue did not appear on the documentation for the entries in issue in Black & White, there are many instances in which entry documentation relating to (formerly) suspended cases sets forth the correct botanical name for the Persian limes. The existence of these documents indicates that the importers and/or their brokers knew the botanical name for Persian limes at the time of entry.

Defendant's Opposition to Plaintiff's Motion to Enter Judgment Pursuant to Test Case Findings ("Defendant's Opp.") at 7.

Customs refuses to stipulate judgment based on the assertion that the mistakes committed by Plaintiffs' brokers and Customs' import specialists were legal and not factual in nature. As such, Customs claims that relief under §1520(c) cannot lie. Customs bases its assertions on its re-review of the "entry papers from those cases combined with a re-review of the plaintiffs' discovery responses in Black & White." Id. at 11. According to Customs, these documents "strongly suggest[] that the limes in issue in these cases were not misclassified because anyone was mistaken as to the correct botanical name of the imported limes, but rather because everyone involved mistakenly assumed that all limes were classifiable in the only tariff provision that expressly contained the term 'limes,' i.e., subheading 0805.30.40, HTSUS." Id.

6

## IV

## ANALYSIS

### A. Collateral Estoppel Does Not Automatically Bar a Party from Litigating Suspended Cases

The authority for test case/suspension procedure is found in USCIT R. 84. Under Rule 84(b), "an action may become a test case 'by order of the court upon a motion for test case designation made after issue is joined.'" Gennerra Sportswear, Inc. v. United States, 16 CIT 313, 314 (1992). In addition, "[a]n action may be suspended under a test case if the action involves a significant issue of fact or question of law which is the same as a significant issue of fact or question of law involved in the test case." USCIT R. 84(d).

The criteria and nature of test and suspended cases as articulated in Gennerra Sportswear, provides that:

> For actions involving a common question of law or fact, the test case/suspension procedure is an available alternative to procedures permitting consolidation of actions under USCIT R. 42(a). Both consolidation and the test case/suspension procedures serve to achieve economies of time, effort and expense, and to promote uniformity of decisions . . . *[T]he test case and the suspended actions maintain their separate identities. The result is that the final decision in the test case is not necessarily legally binding on the suspended actions.*

16 CIT at 314 (emphasis added).

Customs is attempting to differentiate the suspended cases and the test case based on the knowledge of the import brokers and the Customs import specialists at the time of entry, a factual inquiry. No authority was cited for the proposition that a test case holding collaterally estops either party from litigating facts differing from the test case.[6]

---

[6] The Plaintiffs had originally argued that Customs is bound because Black & White is a test case, and that the court should enter judgment in their favor and find the Government estopped by the court's decision in Black & White. Plaintiffs' Motion at 2. Plaintiffs cited no authority

7

Collateral estoppel, which may preclude a party from relitigating an issue resolved in a prior case, does not foreclose a party from litigating the existence of different facts. Moreover, collateral estoppel precludes relitigation of only those issues actually litigated in the prior action, but not those issues which <u>might</u> have been litigated. <u>Nichols & Co., Inc. v. United States</u>, 447 F. Supp 455, 459 (Cust. Ct. 1978), <u>aff'd</u>, 66 CCPA 28, 586 F.2d 826 (1978). A party is collaterally estopped from litigating an issue when:

> (1) the issue presented is identical to one adjudicated in a prior case; (2) the issue was raised and "actually litigated" in that prior case; (3) the previous determination of that issue was "necessary" to the judgment rendered in the prior case; and (4) the party precluded was "fully represented" in the prior action.

<u>Elkem Metals Co. v. United States</u>, 135 F. Supp. 2d 1324, 1333 (CIT 2001) (quoting <u>Thomas v. Gen. Servs. Admin.</u>, 794 F.2d 661, 664 (Fed. Cir. 1986).

In an analogous situation, collateral estoppel has been held inapplicable in classification cases. <u>See</u> <u>Nichols</u>, 447 F. Supp at 460 (citing <u>United States v. Stone & Downer Co.</u>, 274 U.S. 225, 236, 47 S. Ct. 616, 71 L. Ed. 1013 (1927)). In <u>Stone</u>, the Supreme Court held that the decision by the Court of Customs Appeals on a classification issue was "not determinative" on a subsequent importation "of the same type of merchandise, by the same importer, even though the issues were the same." <u>Id.</u> The Court in <u>Stone</u> stated that, "there are constant differences as to proper classifications of similar importations. The evidence which may be presented in one case may be much varied in the next." 274 U.S. at 236.

---

for this proposition and conceded during oral argument that the court was not bound by collateral estoppel to find for the plaintiff because of the decision in the prior test case.

Customs consented to a motion to designate Black & White as a test case, based on its understanding at the time that the legal issues between the cases appeared identical; the facts, however, were never stipulated as identical. Whether the Customs import specialists knew the proper botanical classification of the limes is the factual heart of this case. Customs is properly afforded the opportunity to litigate those facts for purposes of distinguishing the current consolidated cases from Black & White.

## B. A Mistake of Fact Under § 1520(c) Can be That of Either the Importer or Customs

### 1. Reliquidation Under § 1520(c)

An importer may protest the classification of merchandise when the importer believes Customs has misinterpreted the applicable law and improperly classified the importer's merchandise. 19 U.S.C. § 1514 (1988)[7]; see also Boast, Inc. v. United States, 17 CIT 114, 116 (1993). Unless a protest is filed within ninety days of notice of liquidation, decisions regarding tariff treatment of merchandise are "final and conclusive upon all persons." 19 U.S.C. § 1514(a), (c)(2).

However, 19 U.S.C. § 1520(c)(1) expands the time for relief by allowing reliquidation of imported merchandise to correct clerical errors, mistakes of fact, or other inadvertencies not amounting to errors of law, if they are brought to the attention of the appropriate Customs officer within one year of the date of liquidation. Section 1520(c)(1) is not, however, a broad remedy for all decisions that are adverse to the importer, but rather "the statute offers 'limited relief in

---

[7] All citations to 19 U.S.C. § 1514 in this opinion are to the 1988 version of the United States Code, which was in effect during the period of time relevant to this case. The statutory language of 19 U.S.C. § 1514 has since changed.

the situations defined therein.'" PPG Indus., Inc. v. United States, 7 CIT 118, 123 (1984) (citation omitted). Section 1520(c)(1) provides in relevant part:

> (c)    Reliquidation of entry
> Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct --
>
> (1) a clerical error, *mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence*, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction.

19 U.S.C. § 1520(c)(1) (emphasis added).

Case law interpreting the statute emphasizes that "[s]ection 1520(c)(1) does not afford a second bite at the apple to importers who fail to challenge Customs' decision within the 90-day period set forth in § 1514 . . . . [U]nder no circumstances may the provisions of § 1520(c)(1) be employed to excuse the failure to satisfy the requirements of § 1514." ITT Corp. v. United States, 24 F.3d 1384, 1387 n.4 (Fed. Cir. 1994). See also Boast, Inc., 17 CIT at 116 (stating that § 1520(c)(1) "is 'not an alternative to the normal liquidation-protest method of obtaining review' [under § 1514], but rather affords 'limited relief' where an unnoticed or unintentional error has been committed.") (quoting Computime, Inc. v. United States, 9 CIT 553, 556, 622 F. Supp. 1083, 1085 (1985) (further quotation and citations omitted)).

**2. The Mistake of Fact Required Under § 1520(c) Need Not be That of Both Parties**

In addition to finding that the plaintiff in Black & White had satisfactorily demonstrated that a factual mistake occurred, the court emphasized that a plaintiff seeking recovery under § 1520(c) need only demonstrate that *either* the importer or Customs was factually mistaken and that such mistake resulted in the erroneous classification. Black & White does not stand for the proposition that only a mistake of fact on the part of the importer or its broker can satisfy § 1520(c). See Black & White,125 F. Supp. 2d at 540-43. Indeed, § 1520(c) is silent as to which party must make the mistake of fact, and in Black & White the court emphasized that point:

> In interpreting the definition of "mistake of fact" under § 1520(c), the Chrysler court stated that it "does not require a plaintiff to demonstrate evidence of the underlying cause or reason for its mistake of fact, and case law does not appear to support of [sic] such a requirement." . . . Hence the Plaintiff need only demonstrate "that either the importer or Customs had a mistaken belief as to the correct state of facts."

125 F. Supp. 2d at 543 (quoting Chrysler Corp. v. United States, 87 F. Supp. 2d 1339, 1352 (CIT 2000)) (emphasis added).

Relief is unavailable under § 1520(c) where the mistake that ultimately caused the erroneous classification was one of law. In Black & White, the court concluded that the unrebutted evidence of the Plaintiff's mistake coupled with Customs' admission in its Answer that "if the involved import specialist had understood the meaning of the term '*Citrus aurantifolia*'. . . the goods would have been classified as other," satisfied the mistake of fact requirement under § 1520(c). Id. at 535. Thus, the court found that the plaintiff's import broker and Customs had both committed a mistake of fact that resulted in the erroneous classification. Id. at 542.

11

**3. <u>Black & White</u> Held that Misclassification of Imported Goods, Caused by a Lack of Accurate Information Concerning the Goods, Results in a Mistake of Fact**

Section 1520(c) permits reliquidation in order to correct "a clerical error, *mistake of fact, or other inadvertence not amounting to an error in the construction of a law*." <u>Id.</u> (emphasis added). The court relied on the distinction between a mistake of fact and an error in the construction of a law for purposes of § 1520(c), which provides:

> [M]istakes of fact occur in instances where either (1) the facts exist, but are unknown, or (2) the facts do not exist as they are believed to. *Mistakes of law, on the other hand, occur where the facts are known*, but their legal consequences are not known or are believed to be different than they really are.

<u>Executone Info. Sys. v. United States</u>, 96 F.3d 1383, 1386 (Fed. Cir. 1996) (emphasis added) (quoting <u>Hambro Auto. Corp. v. United States</u>, 66 C.C.P.A. 113, 119, 603 F.2d 850, 855 (C.C.P.A. 1979)); <u>C.J. Tower & Sons, Inc. v. United States</u>, 68 Cust. Ct. 17, 22, 336 F. Supp. 1395, 1399 (1972), <u>aff'd</u>, 61 C.C.P.A. 90, 499 F.2d 1277 (1974) (stating that a mistake of fact exists where a person understands the facts to be different than they truly are, however, a mistake of law will exist where a person knows the facts but has a mistaken belief as to the legal consequences of those facts.); <u>Ford Motor Co. v. United States</u>, 157 F.3d 849, 857 (Fed. Cir. 1998) ("[F]or an error to be correctable, it must . . . not qualify as an 'error in the construction of a law.'").

The court found that "[a]ccordingly, Black & White's mistake was based on lacking factual knowledge, namely the limes' proper botanical designation at the time of entry." <u>Black & White</u>, 125 F. Supp. 2d at 542. Moreover, the court clarified that as ignorance concerning the limes' proper botanical classification resulted in their misclassification, this mistake of fact sprang from the taxonomic characteristics of the limes and not the erroneous interpretation of tariff provisions:

[T]he proper botanical classification of an imported botanical item is not part of the legal analysis for [tariff] classification purposes . . . Taxonomical classification is inherently factual; whether an import be fish or fowl, lemon or lime is a question resolved by qualities manifest in its nature. The misidentification here was derived from a misapprehension of the relation of those qualities to a taxonomical system, not one of legal classification.

Id. at 534, 544.

### C. Viewing the Evidence in the Light Most Favorable to the Party Opposing Summary Judgment, A Genuine Issue of Material Fact Exists

Customs submitted a statement from a Customs import specialist team leader, in which she avers her state of mind at the time of entering the imported limes. Her statement is ambiguous as to whether she was aware of the limes' proper botanical classification.

Team leader Magdalena Gonzalez-Castilleja states, in relevant part:

I, and the other import specialists on my team who shared in the responsibility of classifying [limes] … assumed that all imported limes, including the Persian limes at issue, were classified under subheading 0805.30.40, HTSUS, as "Citrus fruit, fresh or dried: … limes (Citrus aurantifolia)." The reason we made this assumption is that this was the only provision that contained the general term "limes." (This was also consistent with the manner in which limes had been classified under the former tariff schedule, as "limes" under TSUS item 147.22.) Likewise, I assumed that the provision for "Citrus fruit, fresh or dried: Other" in subheading 0805.90.00, HTSUS, covered citrus fruit other than limes.

Although I was aware of the parenthetical language … setting forth the botanical term, "citrus aurantifolia," I did not realize at the time that this was a limitation on the types of limes that were classifiable in that provision. Rather, I assumed that the phrase "citrus aurantifolia" was synonymous with the term "limes" immediately preceding the parenthetical.

May 15, 2002, Declaration of Magdalena Gonzalez-Castilleja, Appendix to Defendant's Supplemental Opposition to Plaintiff's Summary Judgment Motion.

This statement does not clarify whether Customs import specialists were aware that the Persian limes are of the *citrus latifolia* variety and not the *citrus aurantifolia* variety. In addition, despite the evidence that the specialists received entry documents and invoices that made reference to the limes as being of the *citrus latifolia* variety, it is unclear whether this documentation apprised the specialists of the proper botanical classification. While it may be true the specialists classified the limes under the incorrect tariff provision because it referred to limes *eo nomine*, the court cannot ascertain whether being apprised of the limes' proper botanical classification would have altered the specialists' behavior. Certainly, it is possible, inter alia, that if the import specialists were indeed unaware that the limes are of the *citrus latifolia* variety, being apprised of this fact may have alerted them that the reference to *citrus aurantifolia* "was a limitation on the types of limes that were classifiable in that provision" and that their assumption "that the phrase 'citrus aurantifolia' was synonymous with the term 'limes' immediately preceding the parenthetical" was erroneous. In other words, Ms. Gonzalez-Castilleja's statement fails to clarify whether "the facts exist, but [were] unknown" to her and her teammates upon entering the limes. As it stands, this statement can plausibly support the assertion that the Customs import specialists misclassified the limes due to a factual mistake.

Accordingly, the court concludes that a genuine issue of material fact exists as to whether the Customs import specialists were aware of the proper botanical classification of the limes, and moreover, the significance of their choice of tariff classification. Therefore, the court cannot grant summary judgment to either party.

# VI

## CONCLUSION

Defendant has introduced sufficient evidence to demonstrate the existence of a genuine issue of material fact. Therefore, summary judgment may not be granted. The only issue remaining for determination at trial is whether the Customs import specialists' mistake was legal or factual in nature.

For the foregoing reasons, Plaintiffs' Motion to Enter Judgment Pursuant to Test Case Findings is denied. Trial on the remaining issue will be held at the earliest convenience of the parties.[8]

_____
Evan J. Wallach, Judge

Dated: October 24, 2002
New York, New York

_____

[8] Depositions of the Customs import specialists will be admitted as evidence at trial for all purposes relating to any relevant question of fact. The parties may, if they choose, call some or all of those individuals to testify.